NOT DESIGNATED FOR PUBLICATION

No. 127,916

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AUSTIN KEITH MURPHY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; STEVEN JOHNSON, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Paul J. Kasper*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., ISHERWOOD, BOLTON FLEMING, JJ.

HILL, J.: Claiming insufficient evidence of criminal intent and a complex closing argument error by the prosecutor, Austin Murphy asks us to overturn his convictions for two counts of aggravated indecent liberties with two young girls. Our review of the record reveals ample evidence to show the jury that Murphy acted with the intent to arouse or satisfy his sexual desires. And we detect no burden shifting or misstatement of the law in the prosecutor's closing argument as Murphy claims. We thus affirm.

1

*A sleepover ends horrifically.*

We will follow the suggestion of the parties and refer to the two girls with the pseudonyms, Sandy and Harriet.

In December 2022, Murphy, 25, lived with his girlfriend and her 10-year-old daughter, Sandy. One night, Sandy invited her cousin, Harriet, 11, for a sleepover. Harriet often slept over at Sandy's house. They slept in the same bed.

In the night, Harriet woke up because she felt someone sit on the bed. She heard the dangle of chains and Murphy's voice whispering something. Murphy rubbed her using what felt like his finger on her "girl parts." He did not touch her anywhere else.

Sandy woke up and felt Murphy touching her in her vagina and felt an object being inserted into her vagina. She then saw Murphy with a blue pipe in his hand. He was not touching her anywhere else. Murphy stopped after Sandy opened her eyes.

Later that morning, Murphy apologized to Sandy. He asked if she had felt anything. She had. He said, "I'm sorry. I didn't mean to." He told her, "Do not tell your mom. Promise. Promise."

Later, during an investigation of the incident, Murphy told an officer, "From what I've picked up is I guess I touched them inappropriately." Murphy was arrested. The arresting officer noticed that Murphy had a chain attached to his belt loop.

Sandy's mom found the blue pipe in Sandy's room and gave it to the police. Murphy told law enforcement officers that he had found the blue pipe in the trash. It had been modified. He thought it looked like a penis. He admitted he went into the girls' room

to try to talk to the girls late at night. He admitted he had the pipe in his hand and sat on the bed that the girls were sleeping on.

*Murphy is charged, tried, and convicted.*

The State charged Murphy with two counts of aggravated indecent liberties with a child, and he was found guilty of both counts by a jury. Recorded forensic interviews of both girls were played at trial. Recorded interviews of Murphy were also played for the jury. The two girls, a sheriff's officer, and the forensic interviewer testified.

While speaking about Sandy in the closing argument, the prosecutor said, "[T]here was simply no evidence presented or reasonable explanation for a 25-year-old man to touch a 10-year-old girl with a blue pipe around her vagina, other than to arouse or to satisfy his sexual desires." The prosecutor then made a similar statement about Harriet.

The district court sentenced Murphy to two concurrent 25-year life sentences with no possibility of parole.

*Murphy claims insufficient evidence to prove his specific intent.*

The State had to prove that Murphy, with a child under 14 years of age, engaged in "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to *with the intent to arouse or to satisfy the sexual desires* of either the child or the offender, or both." (Emphasis added.) K.S.A. 21-5506(b)(3)(A).

Murphy claims that there was insufficient evidence to establish that he intended to arouse or satisfy his sexual desires in this case. Other than the acts themselves, he argues that there was no evidence that he touched Sandy or Harriet with the intent to arouse or

3

satisfy his sexual desires. Murphy contends that the acts themselves are insufficient to establish that he had the required intent.

Murphy points out that he was completely dressed and not touching himself. He had done nothing like this before. He says the lewd acts in this case were "some of the least lewd acts possible" and likens this case to the prosecution's case in *State v. Dinh Loc Ta*, 296 Kan. 230, 236-37, 243, 290 P.3d 652 (2012). The lewd touching and intent are separate elements. He compares this case to a drug case where a prosecutor argues that possession of drugs is sufficient to establish intent to distribute.

In response, the State argues that the jury could infer intent from the evidence including:

- that Murphy did not touch any part of the girls' bodies besides their vaginal areas,

- Murphy thought the pipe he used looked like a penis,

- he did all of this when the girls were sleeping, and

- he apologized the next day.

When the sufficiency of the evidence is questioned, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. The court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

Circumstantial evidence can support a conviction of even the greatest offense if the evidence allows a fact-finder to find the elements beyond a reasonable doubt. To

sufficiently support the conviction, circumstantial evidence does not need to exclude every other reasonable conclusion. *State v. Barnes*, 320 Kan. 147, 177-78, 563 P.3d 1255 (2025). Intent is usually proven by circumstantial evidence because direct evidence of the defendant's state of mind is rarely available. *State v. Mora*, 315 Kan. 537, 545, 509 P.3d 1201 (2022).

The State must prove beyond a reasonable doubt each element of the charged crime. When the charged crime is aggravated indecent liberties with a child, the evidence must establish both that the defendant committed the lewd fondling or touching and that he possessed the intent to arouse or satisfy sexual desires. These two elements should not be collapsed into one. *Ta*, 296 Kan. at 241-42.

*Murphy's argument is unpersuasive.*

We reject Murphy's attempt to compare his case of vaginal touching to a case of possession of drugs. A reasonable explanation for drug possession can be for personal use as opposed to distribution. But we find no reasonable explanation for a 25-year-old man to touch the vaginas of 10- and 11-year-old girls with a penis-like object or with his finger while the girls were sleeping in their beds. The jury could infer Murphy's intent because he used an object that he thought looked like a penis, he did it when the girls were sleeping, and he apologized afterward.

In *Ta*, relied on by Murphy, the Supreme Court held the jury could not infer that certain touching was lewd from just the defendant's intent. The court cautioned against collapsing the separate elements of lewd touching and intent into one element. Ta touched the faces, hair, arms, and legs of two young girls. Ta told police officers he wanted to have sex with the girls but that he had never had sex with children. The court held that Ta's mental state should not be used to determine whether his touching was

lewd. The touching of the girl's faces, hair, arms, and legs was not lewd. 296 Kan. at 241-43.

But the reverse of *Ta* is not necessarily true. The act of rubbing the girls' vaginas is a strong indicator of the defendant's intent. The elements are not collapsed into one by using the sexual touching as a circumstance to infer intent. Unlike the decision in *Ta*, Murphy did not touch the girls merely on their faces, hair, arms, and legs. He touched the girls only on their vaginas.

Intent can be inferred from different circumstances. When the defendant touches the victims only on an area of the body with sexual connotation, that touching by its very nature suggests a sexual intent. The touching need not occur under the clothes, and the defendant need not be touched, himself, in a sexual manner. *State v. Clark*, 298 Kan. 843, 849-50, 317 P.3d 776 (2014) (touching of breasts); see also *State v. O'Brien*, No. 124,524, 2024 WL 62815, at *5 (Kan. App. 2024) (unpublished opinion) (touching of vaginas during a massage is explicitly sexual). Intent may be inferred when the defendant acts in secrecy. Intent may be inferred when a defendant's actions or words demonstrate that the defendant is conscious of his guilt. *State v. Reed*, 300 Kan. 494, 503, 332 P.3d 172 (2014).

Here, a sexual intent can be inferred because Murphy touched the girls only on their vaginas. It was not accidental, and there was no medical or hygienic reason. He used an object he thought looked like a penis. Murphy waited until it was night time and everyone was sleeping. He touched the girls' vaginas while the girls were sleeping in their beds. And he apologized and asked the girls not to tell anyone the next day, indicating that he was conscious of his guilt. Considering these circumstances together in a light most favorable to the State, a rational fact-finder could have found the defendant's intent beyond a reasonable doubt. We find no reversible error here.

*Is there closing argument error here?*

Murphy contends that during the closing argument, the prosecutor diminished the presumption of innocence, shifted the burden of proof, and misstated the law of intent. He asks us to overturn his convictions because of these errors. The State said the argument holds no reversible errors.

In closing argument, referring to Sandy, the prosecutor said, "[T]here was simply no evidence presented or reasonable explanation for a 25-year-old man to touch a 10-year-old girl with a blue pipe around her vagina, other than to arouse or to satisfy his sexual desires." The prosecutor made a similar statement about Harriet.

*The law we must follow in resolving this issue is well established.*

A Kansas appellate court uses a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *Mendez*, 319 Kan. at 737. We answer two questions about error and prejudice:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

The law is realistic in closing arguments, but there are limits. Prosecutors are afforded wide latitude in closing arguments. But a prosecutor falls outside this wide latitude, and thus commits error, by misstating the law. It is error for the prosecutor to shift the burden of proof to the defendant or to lower the State's burden of proof. But a prosecutor does not shift the burden of proof to the defendant by pointing out a lack of evidence to support a defense. The prosecutor's comment must be evaluated in context and can be mitigated by jury instructions setting out the proper burden of proof. *State v. Slusser*, 317 Kan. 174, 185, 527 P.3d 565 (2023); *State v. Watson*, 313 Kan. 170, 176-79, 484 P.3d 877 (2021).

Murphy argues that the prosecutor's assertion that the act itself established the requisite intent (1) improperly shifted the burden of proof; (2) diminished the presumption of innocence; and (3) misstated the law. The prosecutor shifted the burden of proof to Murphy to give an alternative explanation for why he touched the girls the way he did. Murphy compares the prosecutor's comments to those in *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004), *overruled on other grounds by Sherman*, 305 Kan. 88. Murphy says the prosecutor created an improper presumption that the acts proved the intent citing *Slusser*, 317 Kan. at 175-76. And he says the prosecutor misstated the law by stating that the jury could assume from the act itself that Murphy had the requisite intent citing *State v. Naputi*, 293 Kan. 55, 60, 260 P.3d 86 (2011).

The State argues the prosecutor started its closing argument with the correct burden of proof. The State says at no point did the prosecutor say or imply that the jury could assume intent from the act itself. And the State argues that if there was error, the error was harmless because the comments were minor and isolated, the jury was instructed correctly, and there was enough evidence for the jury to conclude beyond a reasonable doubt that Murphy had the intent.

After reading the cases, we are not convinced that the prosecutor's remarks here, either by design or chance, shifted the burden to the defendant. In *Tosh*, the court held the prosecutor's question, "Is there any evidence that it didn't happen?" was an improper attempt to shift the burden of proof to the defendant where the prosecutor made other egregious errors in cross-examination and closing argument. 278 Kan. at 92, 98. But the *Tosh* court did not announce a rule that the State is prohibited from either asking whether evidence supports a defendant's theory or highlighting the absence of such evidence. See *State v. Collins*, No. 125,319, 2026 WL 1265753, at *17-18 (Kan. App. 2026) (unpublished opinion).

In several other cases, the court has found similar language to be within the wide latitude afforded by prosecutors. In *Watson*, the court held that, in context, the prosecutor's comment that Watson had provided "no evidence" did not shift the burden to the defense but was fair comment on the strength of Watson's defense, specifically, the lack of evidence to corroborate Watson's testimony. The jury was properly instructed on the State's burden of proof. 313 Kan. at 177-179.

In *State v. Cosby*, 293 Kan. 121, 137, 262 P.3d 285 (2011), the court held that the prosecutor's statement, "But ask yourself this: Have you heard any evidence that suggests that [the defendant] did not walk up to [the victim] with some purpose in mind and execute that purpose?" was not an attempt to shift the burden of proof, in context; rather it constituted only a general question about the absence of evidence to rebut the State's witnesses. The prosecutor was reviewing the evidence. The district court gave a correct burden of proof instruction, and the prosecutor referred to the burden of proof instruction.

In *State v. Wilson*, 295 Kan. 605, 623-24, 289 P.3d 1082 (2012), the court held the prosecutor's statement that Wilson had "no explanation about how his DNA is on a cigarette butt" did not shift the burden of proof to the defense; rather, in context, the prosecutor was commenting on the merit of Wilson's defense.

In *State v. Stone*, 291 Kan. 13, 18-19, 237 P.3d 1229 (2010), the court held that the prosecutor's statement that the defendant had "obstacles to overcome" did not shift the burden of proof or imply the defendant had to disprove the charges because the prosecutor reviewed the burden of proof instruction and the specific elements that it had to prove.

Other aspects of this trial reinforce our belief that these remarks were not reversible error. The State did not imply that Murphy had to disprove the occurrence of the crime. The prosecutor was discussing the elements of the crime. As explained above, the act of touching the girls' vaginas by its very nature suggests a sexual intent. The prosecutor stated that the State had to prove Murphy's intent beyond a reasonable doubt. The district court instructed the jury that the State had the burden to prove Murphy guilty beyond a reasonable doubt and that Murphy was not required to prove he was not guilty.

Turning to Murphy's argument that the State's closing argument diminished the presumption of innocence, we remain unconvinced. In *Slusser*, the court held that the prosecutor's statement that the jury could presume Slusser's intent to distribute based on the amount of methamphetamine in his possession relieved the State of its burden of proof to prove that element of the crime. 317 Kan. at 190. The law permits such a statement.

Here, the prosecutor did not say or imply that the jury could presume Murphy's intent. The prosecutor said the State had to prove Murphy's intent beyond a reasonable doubt. We see no misstatement presumption diminishment here.

Finally, when we examine the State's closing argument closely, we find no misstatements of the law like those found in the cases on this issue. Prosecutors misstate the law by saying the jury need not consider the defendant's intent when intent is an element of the crime. In *Naputi*, the court held the prosecutor's statements that all the

10

State was required to prove was the fact of lewd contact and that the jury did not need to consider Naputi's subjective intent were misstatements of the law that effectively combined the lewd touching element with the specific intent element. 293 Kan. at 60-61.

In *Watson*, the court held that the prosecutor misstated the law by indicating that Watson completed the crime of Medicaid fraud by submitting inaccurate timesheets regardless of his intent in doing so, eliminating an essential element of the crime. 313 Kan. at 181-86.

In *State v. Palacio*, No. 126,220, 2024 WL 2237606, at *8-9 (Kan. App. 2024) (unpublished opinion), the panel held the prosecutor did not misstate the law where the prosecutor stated the jury could infer the defendant's intent because "Why else is someone touching a young girl's breasts in that way . . . ?" The prosecutor did not tell the jury to disregard the specific intent element; the prosecutor merely explained the act of lewd touching could be used to infer intent.

Here, like *Palacio*, the prosecutor did not say that the jurors need not consider Murphy's subjective intent or that the crime was completed regardless of Murphy's intent. The prosecutor correctly stated that the State must prove beyond a reasonable doubt that Murphy had the intent to arouse or satisfy his sexual desires. The prosecutor then reviewed the evidence and concluded by saying there was no reasonable explanation for Murphy to touch the girls' vaginas other than to satisfy his sexual desires. This was not a misstatement of the law. The act of touching a young girl's vagina can be used to infer intent.

Murphy has failed to show that there was insufficient evidence of his intent. In overview, there is ample evidence in this record to sustain his convictions. Also, we find no reversible error in the State's closing argument.

Affirmed.